UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA, ex rel.
BAYER CLOTHING GROUP, INC.,

                    Plaintiff,

vs.                             Case No.  3:06-cv-42-J-33TEM

TROPICAL SHIPPING AND CONSTRUCTION
COMPANY, LTD., and CROWLEY LINER
SERVICES,

                    Defendant.

_____/

## ORDER

_____This cause comes before the Court pursuant to two motions to dismiss filed in the above-captioned case.  First, Defendant Tropical Shipping and Construction Company, Ltd. filed its Motion to Dismiss the Complaint and/or Motion for a More Definite Statement (Doc. # 17) on April 4, 2006.  Plaintiffs filed a Response (Doc. # 25) on June 2, 2006.  Second, Defendant Crowley Liner Services, Inc. filed its Motion to Dismiss and/or For a More Definite Statement (Doc. # 18) on April 4, 2006 and Plaintiffs responded (Doc. # 27) on July 14, 2006.

## I.  STANDARD OF REVIEW

In deciding a motion to dismiss, the Court "accept[s] the facts of the complaint as true and view[s] them in the light most favorable to the non-moving party."  See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).  A

complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle it to relief." 75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The plaintiff is not required by the Federal Rules of Civil Procedure to "set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must be sufficient to afford the defendant "fair notice of what the claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003)(quoting Conley, 355 U.S. at 47).

## II.  **BACKGROUND**

Bayer Clothing Group is a Pennsylvania manufacturer of men's clothing. (Doc. # 27, p. 2.) In particular, Bayer makes men's blue blazers that are assembled overseas and shipped to the United States, where they are sold in retail chains throughout the country. (Id.) Bayer made approximately 300-500 shipments to the United States on vessels owned by the two defendants in this case, Tropical Shipping and Construction Company, Ltd. and Crowley Liner Services, Inc. (Doc. # 1, p. 1.) Both defendants are common carriers of merchandise for hire between the United States and

-2-

foreign countries.  (Id. at 2-3.)  Tropical Shipping is a Cayman Islands corporation with its principal place of business in Riviera Beach, Florida.  (Id. at 2.)  Crowley Liner Services is a Delaware corporation with its principle place of business in Jacksonville, Florida.  (Id.)

In preparation for shipment, Bayer packages their garments and places them inside a shipping container.  Upon delivery of the container to the shipper, a bill of lading is prepared.  The bill of lading is filled out, with the carrier designating the number of packages in each shipment.  The package notation is of particular significance to both parties because the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5), states that a carrier's liability for loss of or damage to goods is limited to an amount not exceeding $500 per package.  Although each container contained numerous packaged garments, in each shipment, Defendants listed the container itself as the package.

Bayer brings this qui tam action for penalties under the Harter Act, which prohibits carriers from inserting in any bill of lading language that relieves it from liability for loss or damage, on behalf of the United States.  See 46 U.S.C.A. §§ 190, 194. Bayer claims that Defendants have violated the Harter Act, "[b]y manipulating the description of the cargo on the face of the bill of lading, and by designating the ocean shipping container in which the goods are loaded as the 'number of packages' in a shipment."

(Doc. # 1, p. 3.)  In so doing, "Defendants can manipulate the limitations on their liability for cargo damages."  (Id.)

III.  **ANALYSIS**

    A.  **Subject Matter Jurisdiction**

Defendants both argue that Bayer lacks standing to sue as a qui tam plaintiff because it suffered no injury in fact.  (Doc. # 17, p. 6; Doc. # 18, p. 11.)  Plaintiff argues, and the Court agrees, that Bayer has standing to sue in this case because (a) Bayer has alleged that Defendants' practices have caused the company to incur increased insurance premiums and deductibles (Doc. # 27, p. 5); (b) the real plaintiff in a qui tam action is the government and the government's injury satisfies the injury-in-fact requirement, see Butler v. Magellan Heath Servs., Inc., 74 F. Supp. 2d 1201, 1213 (M.D. Fla. 1999); and (c) statutes that give a private party the right to sue on behalf of the government effectively assign the government's claims to the qui tam plaintiffs.  Id.  Finally, Bayer has alleged an injury-in-fact because:

> Bayer is not a mere concerned bystander or interloper in this dispute.  It has a concrete financial interest in the outcome in addition to the penalties provided for in Section 194 of the Harter Act.  Bayer makes over $125 million in clothing sales a year.  It makes hundreds of shipments each year on Tropical Shipping and Crowley Maritime vessels.  A substantial part of the cost of its garments is the cost of shipping cut cloth, buttons, thread and labels to factories in other countries, and returning the assembled clothing to the United States.  If one of Bayer's principle subcontractors–- ocean carriers–- can exempt themselves

> from liability for acts of negligence which result in losses to Bayer, then Bayer's costs go up, and its prices go up.
>
> The cost of marine cargo insurance is another major cost center which figures into the price of its products. Cargo losses for which there is no subrogation from negligent third parties affect Bayer's loss ratio. Bayer's loss ratio affects the amount which it pays for marine insurance.

(Doc. # 25, pp. 4-5).  Additionally, Bayer alleges that it

> suffers substantial out of pocket losses on each lost shipment.  First, it insures its shipments for the replacement cost, not for lost profits, so on each shipment which is lost at sea it suffers substantial loss in excess of the cost of the merchandise.  Secondly after the package limitation was applied to Tropical's shipments, its insurance carrier substantially increased its premiums, adding to the cost of every future shipment.   To combat the now higher premiums, Bayer increased its deductible.

(Doc. # 27, p. 5, n.3.)  Based on these assertions, the Court rejects Defendants' argument that Bayer lacks standing to bring the suit.

### B.   Forum Selection Clause

Defendant Tropical Shipping argues that, pursuant to Fed. R. Civ. P. 12(b)(3), even if this Court has subject matter jurisdiction, this case should be transferred to the U.S. District Court for the Southern District of Florida.   The basis for Defendant's argument is that since September of 2003, the bills of lading issued to Bayer contained a forum selection clause, which stated that:

> [t]he contract evidenced by or contained in this Bill of Lading is governed by the Law of the United States of

America and the U.S. District Court for the Southern
District of Florida shall be the sole and exclusive forum
for any claim or dispute hereunder.

(Doc. # 17-2, p. 1.)

In this case, the primary question is not whether the forum-selection clause is valid, but whether it encompasses claims of the type alleged in Plaintiffs' Complaint.  While finding that the forum-selection clause is not broad enough to apply to the instant action, the Court acknowledges that, as is often the case with the interpretation of forum-selection clauses, this case presents a close call.  See PODS, Inc. v. Paysource, Inc., 2006 U.S. Dist. LEXIS 31838 at *13, n.6 (M.D. Fla. May 18, 2006).

Contractual forum-selection clauses are entitled to a presumption of validity and the Court will honor the parties' choice of venue unless there is a compelling reason to the contrary.  See Sompo Japan Ins., Inc. v. Alarm Detection Sys., Inc., 2003 U.S. Dist. LEXIS 13689, at *3 (N.D. Ill. August 6, 2003).  In the Eleventh Circuit, "[c]lauses referencing 'any lawsuit regarding this agreement' and 'any action brought by either party in any court' have been broadly construed to include contract claims 'arising directly or indirectly from' the contractual relationship, as well as tort and extra-contractual claims."  See PODS, Inc., 2006 U.S. Dist. LEXIS 31838 at *4 (citing for example Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1380 (N.D. Ga. 2004); Stephens v. Entre Computer Ctrs., Inc., 696 F.

Supp. 2d 636, 638 (N.D. Ga. 1998); and <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 810 F.2d 1066, 1070 (11th Cir. 1987)).  However, clauses that include "any lawsuit regarding this agreement", "any action brought by either party in any court", or "any claims arising directly or indirectly from the contract" are considerably more broad than the language contained in the bills of lading in the instant suit, which restricts itself to suits *arising under* the contract.

This Court cannot conclude that a <u>qui tam</u> suit for penalties under the Harter Act comes within the scope of the forum-selection clause in this case.  First, as Plaintiffs argue, the suit is not brought to enforce the terms of the contract set forth in the bill of lading, but rather "to impose and collect a penalty which is established by law for issuing bills of lading with inaccurate information." (Doc. # 25, p. 6.)  Second, it is not clear that the forum-selection clause applies to suits being brought on behalf of the United States.  After all,

> [t]he true Plaintiff is the United States, which is not a party to the bill of lading and whose rights cannot be restricted by a contract between Bayer and Tropical.  If it were otherwise, the United States could be subjected to forum selection clauses providing for suit in the Dominican Republic, thereby depriving the United States of the right to enforce the penalty altogether.

(<u>Id.</u>)

## C.    Arbitration Clause

According to Crowley, the instant suit belongs in arbitration in New York. (Doc. # 18, p. 15.)[1] The arbitration provision states that "[s]hould any dispute arise under this Contract that the parties cannot resolve, the matter shall be referred to arbitration in New York, in accordance with the Arbitration Rules of the New York Society of Maritime Arbitrators." (Doc. # 18-5, p. 2.)[2]

Like the language of the forum-selection clause discussed supra, the language of the arbitration provision presents the Court with a close call. However, when considering an arbitration provision, unlike a forum-selection clause, it is well-settled that the district court should have

> a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

---

[1] Crowley states that "[m]ost of the bills of lading took place under these service contracts," but neglects to specify which contracts contained this provision. (Doc. # 18, p. 16.)

[2] The Court notes that enforcement of the arbitration provision in this case will force Bayer to litigate in two forums; however, the Supreme Court has accepted such a result when necessary to give effect to the parties' agreement to arbitrate. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19-21 (1983) ("Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.").

Id. at 24-25.  Furthermore, in the context of arbitration clauses, the Eleventh Circuit has held that "where the dispute occurs as a fairly direct result of the performance of contractual duties . . . then the dispute can be fairly said to arise out of or relate to the contract in question and arbitration is required."  Telecom Italia v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001).

The presumption in favor of enforcing the arbitration agreement in Crowley's bills of lading is somewhat strengthened by the fact that Bayer apparently does not oppose its applicability.  Given the strong presumption in favor of arbitration and the lack of opposition on Bayer's part, the Court concludes that the agreement to arbitrate should be enforced.  Of course, this Court cannot require parties to arbitrate a dispute that they have not previously agreed to arbitrate; accordingly, the Court will compel arbitration of only the aspects of Bayer's claims that are based upon bills of lading containing arbitration provisions.  See Telecom Italia, 248 F.3d at 1114 (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

### D.   Failure to State a Claim

For the following three reasons, Defendants argue that the Complaint fails to state a claim upon which relief can be granted.

### 1.   The Harter Act's Applicability to Inbound Shipments

First, Defendant Tropical Shipping claims that the Complaint fails to state a claim because the Harter Act applies only to shipments outbound from the United States, not to shipments coming into the country.  (Doc. # 17, p. 10.)  Defendant argues that the plain language of the Harter Act indicates that shipments inbound from foreign ports to United States ports are not covered by the Act.  See 46 U.S.C. App. § 190 ("It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports . . .").

Plaintiffs disagree, arguing that the Harter Act also applies to bills of lading issued in foreign ports for cargo being carried to the United States.  (Doc. # 25, p. 8.)  Indeed, as Plaintiffs note, the United States Supreme Court addressed this very issue in Knott v. Botany Mills, 179 U.S. 69 (1899).  In the Knott case, the Court was faced with the following question: "[d]o the words . . . 'any vessel transporting merchandise or property from or between ports of the United States and foreign ports,' include a foreign vessel transporting merchandise from a foreign port to a port of the United States?"  Id. at 72.  The Court answered this question in the affirmative.  Id. at 75-77 (stating that although Section One and Section Three of the Harter Act contained wording that was not exactly the same, "the two phrases, as applied to the subject-matter, are precisely equivalent, and are both equally applicable

to a foreign voyage that ends, and one that begins, in this
country.") Knott remains good law, compelling the Court to agree
with Plaintiffs that the Harter Act applies to inbound as well as
outbound shipments.

### 2. Conditions Precedent

Second, Defendants argue that Bayer neglected to satisfy a
condition precedent to the instant suit because it failed to
"'demand' that the bills of lading state the 'units' as the
'packages' until May 31, 2001, the date of its first demand
letter." (Doc. # 17, p. 11; Doc. # 18, p. 4.)  The Act states that
a carrier may not be subject to a fine unless the carrier "refuses
to issue on demand the bill of lading herein provided for."  46
U.S.C. App. § 194.  Defendants argue that this section creates a
condition precedent-- a demand by the shipper-- to bringing suit
under the Act.  In support of its argument, Tropical Shipping cites
to Austin Nichols & Co. v. Steamship "Isla de Panay", 267 U.S. 260
(1925), wherein the Supreme Court held that, when the bill of
lading was silent as to the condition of the goods, a failure to
note on the bill of lading that cargo was damaged did not estop the
carrier from later stating that the goods were received in bad
condition.  In that case, although the bill of lading was silent as
to the condition of the goods, the carrier obtained a letter of
indemnity from the shipper.  Discussing this common fact pattern

and citing the <u>Isla de Panay</u> case for example, the Fifth Circuit later observed that

> [m]any decisions have condemned the carrier that issues a clean bill of lading knowing that the goods were not in "good order and condition" when received. . . .  That usual fact pattern involves the delivery of goods by the shipper in apparent bad order and condition. Nonetheless, the carrier then issues a clean bill of lading, often because of pressure exerted by the shipper. Often the carrier obtains a letter of indemnity from the shipper.  Relying on the description in the bill of lading, the consignee then takes a bill of lading and pays the shipper for the goods.  The goods are, of course, then found to be damaged, and the holder of the bill of lading sues the carrier.  Having relied on the bill of lading, the holder is then permitted to recover for preshipment damage against the carrier, even though the carrier did not cause that damage.

<u>T.J. Stevenson & Co. v. 81,193 Bags of Flour</u>, 629 F.2d 338, 373 (5th Cir. 1980).

Thus, the <u>Isla de Panay</u> case essentially stands for the proposition that the law does not require a carrier to state the apparent order and condition of the cargo except when the shipper demands it.  "Thus, a bill which is limited or qualified in its statement as to the apparent condition of the goods is not in violation of COGSA unless a complete statement is demanded.  Nor can such a bill, . . . containing no representations with respect to the [condition of the goods] be made the basis of an estoppel."

<u>Dorsid Trading Co. v. S.S. Rose</u>, 343 F. Supp. 617 (S.D. Tex. 1972).

<u>Isla de Panay</u> involved a situation that was factually and legally distinguishable from the case at bar.  First, that case involved the condition of the cargo, not the number of COGSA packages.  Second, in <u>Isla de Panay</u>, the carrier made no representation as to the condition of the goods on the bill of lading because the shipper wrote a letter limiting its liability.

Presumably, both parties benefitted from the issuance of the clean bill of lading.  The carrier was able to complete its business of taking cargo on the ship, and the shipper was able to have its cargo transported to its final destination where it was to be received by the consigner.  All would have gone well, except for the fact that the cargo was not sturdy enough to make the trip, and when the consigner came to collect the cargo it had been badly damaged.  The court's holding reflected the concept that a shipper may not receive the benefit of a false clean bill of lading and then later complain that the pre-shipment damage was the fault of the carrier.  In such circumstances, it was sensible for the Court to assign liability to the shipper, who did not demand that the bill of lading reflect the shipment's condition because it sought the benefit of a clean bill of lading.

Here, the circumstances are quite different.  First and foremost, unlike the Plaintiffs in Isla de Panay, the Plaintiffs in this case "allege that the bills of lading were manipulated, which is a variety of fraud [and] that [Bayer] lacked full information concerning the effect of inserting the number '1 container' in the column on the bill of lading labeled 'Quantity.'" (Doc. # 25, p. 10.)  Second, the parties do not allege that listing the number of packages as "1 container" in any ascertainable way benefits Bayer.  Third, in Isla de Panay, the shipper could not be heard to complain that the carrier's bill of lading affirmatively stated an

inaccuracy or misrepresentation-- the bill of lading was silent as to the cargo's condition and the shipper had written a letter acknowledging that the carrier believed the packaging was inadequate.  Conversely, Bayer's complaint alleges that Tropical Shipping's bills of lading contained inaccuracies or misrepresentations that operated to Bayer's detriment and Tropical Shipping's benefit.  For these reasons, even if the Court were to find that <u>Isla de Panay</u> stood for the proposition that a demand is a condition precedent to a suit under the Harter Act, which it does not, the case at bar is sufficiently factually and legally distinct to survive the motion to dismiss.[3]

### 3.    Compliance with the Harter Act

---

[3]    Plaintiffs argue that the language "on demand" does not create a condition precedent to suit.  Rather, Plaintiffs believe that the issuance of a bill of lading "on demand" in the maritime trade is analogous to a the payment of a promissory note "on demand."  Courts have held that, in the context of promissory notes, "the words 'on demand' in a note do not make the demand a condition precedent to a right of action; but import the debt is due and demandable immediately, or at least that the commencement of a suit therefor is a sufficient demand." <u>Appeal of Andress, et al., Executors</u>, 99 Pa. 421 (Pa. 1882); <u>see also</u> <u>Wallace v. M'Connell</u>, 38 U.S. 136 (1839)("in actions on promissory notes against the maker . . . where there suit is against the maker in the one case, and the acceptor in the other, and the note or bill made payable at a specified time and place, it is not necessary to aver in the declaration, or prove on the trial, that a demand of payment was made in order to maintain the action.").

It is not necessary today to find whether Plaintiffs' asserted definition is correct or incorrect.  It is sufficient to say that Defendants have not convinced the Court that a demand from the shipper is a condition precedent to the instant suit.

Defendant Tropical Shipping argues that it technically complied with the Harter Act because it issued bills of lading that satisfied 46 U.S.C. App. § 193, containing "[t]he marks necessary for identification, number of packages or quantity, stating whether it be carrier's or shipper's weight, and apparent order or condition of such merchandise or property delivered to and received by the owner." Defendant attempts to bolster this argument by citing to United States v. Cobb, 163 F. 791 (D. Md. 1906), in which the carrier received for shipment a load of walnut logs and issued bills of lading listing the quantity of the shipment as "one car load of logs, 31 walnut logs." Id. at 796.

The Complaint does not allege that Defendants failed to fill out the bills of lading; rather, it alleges that, when Tropical Shipping completed the bills of lading, they unlawfully manipulated the cargo description information that Bayer provided for shipment. The Eleventh Circuit has determined that the COGSA packages were the containers and Plaintiff does not seek to re-litigate that issue here. See Fishman & Tobin, 240 F.3d 956 (11th Cir. 2001). Rather, in this case, Plaintiff argues that by declaring the containers as the packages, Tropical Shipping unlawfully limited its liability under the Harter Act. Accordingly, the Complaint survives Defendant's attack in this regard.

### 4.   Collateral Estoppel

Defendant Tropical Shipping also argues that this action is barred by collateral estoppel.  It believes that the instant suit is an attempted "end-run" by Bayer after the Eleventh Circuit's adverse ruling in Fishman & Tobin.  However, "[c]ollateral estoppel forecloses re-litigation of an issue of fact or law where an identical issue has been fully litigated and decided in a prior suit" and this case is by no means identical to Fishman & Tobin.  Fishman & Tobin, 240 F.3d at 962.  It is legally distinct in the sense that Fishman & Tobin was brought by Fishman & Tobin and MacClenney Products, Inc. after Tropical Shipping lost their cargo at sea.   Id. at 959.  Tropical Shipping admitted liability but argued that their damages were limited to $500 per container because the container, and not the garments contained inside, was the relevant package under COGSA.  By contrast, the instant suit is brought by different parties-- the United States and Bayer Clothing Group-- against Tropical Shipping as well as Crowley Liner Services, Inc.  Rather than litigating the issue of damages for the lost containers, Plaintiffs argue that Defendants should pay a penalty under the Harter Act as the result of their unlawful limitation of liability in the bills of lading issued to Bayer.  Thus, the Court finds that the two cases are both factually and legally distinct and collateral estoppel does not bar the instant suit.

    5.   **Waiver**

Crowley argues that Bayer has waived its right to bring the instant suit because Bayer continued to do business with Crowley even after Crowley rejected Bayer's request to cease declaring the container as a package.  Crowley points to no legal authority in support of its position and, given the fact that Bayer has alleged that Defendants enjoy a <u>de</u> <u>facto</u> monopoly over their respective services, Crowley's arguments based on estoppel are due to be rejected.

### E.    Statute of Limitations

Both Defendants argue, and Plaintiff agrees, that to the extent that any claims are based on bills of lading issued prior to January 1, 2001, those claims are time barred.  (Doc. # 17, p. 16; Doc. # 18, pp. 17-18; Doc. # 25, p. 13.)

### F.    No Cause of Action Stated for Injunctive Relief

Defendant Crowley Liner argues that the Complaint does not state an action for injunctive relief because it does not allege that there is no adequate remedy available at law.  (Doc. # 18, p. 4.)  Bayer's response does not address this argument, and the Court's review of the Complaint leads it to conclude that Bayer's demand for permanent injunctive relief must be dismissed for the reasons stated in Crowley's Motion to Dismiss.

### G.  Wrongful Joinder

Crowley claims that it has been wrongfully joined with Tropical Shipping in this suit.  (<u>Id.</u> at 16.)  Crowley thinly

supports this argument by citing to and quoting Federal Rule of Civil Procedure 20 and arguing that "[t]hese are not all the same facts as they are two different Defendants with different documentation including different bills of lading and different correspondence."  (Id. at 17.)

Rule 20 states that

[a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20.  As the rule makes clear, joinder of parties is proper only if two conditions are met.  The first requirement is transactional relatedness, which requires that claims against multiple defendants  "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."  There is no bright-line rule defining transactional relatedness and "courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder."  4 James Wm. Moore Et Al., Moore's Federal Practice ¶ 20.05 (3d ed. 1999).  Here, joinder appears to be sensible and the Court sees no prejudice to Defendants by virtue of their joinder in the same action.  Moreover, it is clear that the operative facts are related even if the same transaction is not

involved.  See Civil Aeronautics Bd. v. Carefree Travel, Inc., 513 F.2d 375, 384 (2nd Cir. 1975).

The second requirement for joinder is commonality, which requires the presence of questions of law or fact common to all defendants.  This element is met because questions of law in this case are clearly common to the two defendants.  In sum, this Court is not convinced that joinder of these two Defendants is improper.

### H.    Motion for a More Definite Statement

Defendant Tropical Shipping moves for a more definite statement, arguing that the company cannot reasonably be expected to frame a responsive pleading to the Complaint.  Defendant alleges that "Bayer should be required to replead so as to allege with specificity each and every allegedly non-conforming bill of lading." (Doc. # 17, p. 16.)  Likewise, Crowley also asserts that the Complaint is insufficient because Plaintiffs did not attach the necessary documentation.  (Doc. # 18, pp. 2-4.)

Defendant Crowley Liner argues that the Complaint is deficient in that it fails to attach the bills of lading that it claims were wrongfully prepared by Crowley.  (Id. at 2.)  Crowley also asserts that the following documents should be attached:  (1) the back of the bills of lading, (2) the tarrifs, and (3) the response to its letter of April 22, 2004, any service agreements that were in effect at that time.  (Id. at 2-3.)  As Crowley itself notes,

however, that there is no Federal Rule of Civil Procedure that requires such documents to be attached.

Bayer counters, and this Court agrees, that a more definite statement is not necessary because the "Complaint is in accordance with notice pleading standards of the Federal Rules of Procedure and contains no more than 19 numbered paragraphs. Under Rule 8 of the Federal Rules of Civil Procedure, technical niceties of pleading are not required; rather, a short, plain summary of facts sufficient to give fair notice of the claim asserted is sufficient." (Doc. # 25, p. 13.) As Bayer notes, the bills of lading and related documentation are all within the custody and control of Defendants, and the number of bills of lading continues to grow. (Id.; Doc. # 27, p. 7.) Furthermore, Bayer asserts that the documents in question "contain confidential trade secrets", and "attaching all of these documents would clutter the record" unnecessarily since Defendants have issued "hundreds of bills of lading in this case, which are on identical printed forms." (Doc. # 27, p. 8.)

## IV.  **CONCLUSION**

For the reasons stated herein, Defendant Tropical Shipping's Motion to Dismiss (Doc. # 17) is due to be denied. Defendant Crowley Liner's Motion to Dismiss (Doc. # 18) is also due to be denied except to the extent that it requests that (1) the Court refer to arbitration claims that are based on bills of lading that

contain arbitration provisions and (2) dismiss Bayer's prayer for permanent injunctive relief.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

1. Defendant Tropical Shipping and Construction Company, Ltd.'s Motion to Dismiss the Complaint and/or Motion for a More Definite Statement (Doc. # 17) is **DENIED.**

2. Defendant Crowley Liner's Motion to Dismiss (Doc. # 18) is **GRANTED IN PART, DENIED IN PART.** Bayer's claims against Crowley that are based on bills of lading containing arbitration provisions are hereby referred to arbitration in New York in accordance with the Arbitration Rules of the New York Society of Maritime Arbitrators. Bayer's claim for permanent injunctive relief is **DISMISSED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 26th day of September, 2006.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record