```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  JACKSONVILLE DIVISION


UNITED STATES OF AMERICA, ex rel.
BAYER CLOTHING GROUP, INC.,

             Plaintiff,

vs.                                  Case No.  3:06-cv-42-J-33TEM

TROPICAL SHIPPING AND CONSTRUCTION
COMPANY, LTD., and CROWLEY LINER
SERVICES,

             Defendants.
_____/
```

**ORDER**

This cause comes before the Court pursuant to Defendant Tropical Shipping and Construction Company, LTD.'s Dispositive Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. # 93), filed on November 7, 2007.[1] Bayer Clothing Group filed a Response (Doc. # 97) on December 14, 2007. For the reasons stated below, the motion is granted.

**I.   Procedural History**

Bayer Clothing Group ("Bayer") filed its initial Complaint on January 17, 2006, bringing its claim as a *qui tam* action (Doc. #

---

[1] The instant Motion was filed by Tropical Shipping and Construction Company, one of two Defendants in this action. However, Plaintiff Bayer asserts identical claims against both Tropical Shipping and Crowley Liner Services (see Doc. # 81). Therefore, the reasoning in this opinion applies equally to both Tropical and Crowley.

1).  Bayer alleged violations of the Harter Act, 46 U.S.C. § 193 Appendix, now codified as 46 U.S.C. § 30703, by Tropical Shipping and Construction Company ("Tropical").  46 U.S.C. § 30703 requires that carriers shall issue a bill of lading or shipping document on the demand of a shipper.  46 U.S.C. § 30703(a).  The bill of lading must include a statement of the marks necessary to identify the goods, the number of packages, and the apparent condition of the goods.  46 U.S.C. § 30703(b).  If a carrier violates any provision of the Harter Act, the carrier is fined under Title 18. 46 U.S.C. § 30707(a).  Half of the fine goes to the party injured by the violation, and the other half goes to the United States.  46 U.S.C. § 30707(c).

The United States, appearing independently of Bayer, filed a Motion to Dismiss on July 16, 2007, pursuant to Rule 12(b)(5), Federal Rules of Civil Procedure, and, by analogy to 31 U.S.C. § 3130(c)(2)(A), for failure to state a claim (Doc. # 53).  The United States sought to intervene and dismiss the suit because it believed that Defendants did not violate the Harter Act.  Bayer filed a Response (Doc. # 56) on July 27, 2007.  The United States, with leave of the Court, filed a Reply (Doc. # 66) on August 13, 2007.  The Court held a hearing on the motion on September 27, 2007.

An Order was issued on September 28, 2007, granting the United States' Motion to Dismiss as to the relator action, and dismissing

the *qui tam* claim with prejudice because a *qui tam* action under the Harter Act was not authorized or proper (Doc. # 81 at 7-8). The Court noted that even if the cause had been a proper *qui tam* action, it would have been dismissed on the merits because Tropical's alleged conduct did not constitute a violation of the Harter Act (Doc. # 81 at 7). The Court also granted Bayer's Motion for Leave to File Amended Complaint (Doc. # 78) to allow Bayer to plead a private cause of action under the Harter Act (Doc. # 81 at 8).

Bayer filed an Amended Complaint (Doc. # 81) on October 1, 2007, realleging almost verbatim the same *qui tam* claims as before, but adding in Count II that the Harter Act also provides Bayer with a private right of action to collect fines for Tropical's violations of the Act. Tropical then filed its Dispositive Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment, arguing that: (1) Bayer is improperly attempting to use provisions of the Carriage of Goods by Seas Act ("COGSA") to establish a violation of the Harter Act; (2) even assuming that the Harter Act applies to the subject bills of lading, Tropical did not violate the Harter Act; (3) the Harter Act does not provide a private cause of action for Bayer to recover criminal penalties against Tropical; and (4) Bayer's concerns regarding COGSA package limitations could have been addressed by "declaring a higher value and paying extra freight" (Doc. # 93 at 2).

Bayer's Response argues that: (1) common carriers are not permitted to contract into or out of the provisions of the Harter Act and COGSA; (2) the proper method of enforcing a violation of COGSA § 1303(3) is by bringing an action under § 194 of the Harter Act; and (3) the $500 per-package limitation under COGSA § 1303(3) cannot be enforced unless the Harter Act is interpreted to require carriers to disclose the number of packages on the face of the bill of lading (Doc. # 97 at 2-3).  The Court will address these arguments in turn.

**II. Legal Standard**

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  <u>Cannon v. City of West Palm Beach</u>, 250 F.3d 1299, 1301 (11th Cir. 2001).  The court is to accept the facts in the complaint as true and view them "in the light most favorable to the nonmoving party."  <u>Horsley v. Feldt</u>, 304 F. 3d 1125, 1131 (11th Cir. 2002).  The motion may be granted only if the plaintiff "can prove no set of facts" which would entitle him to relief.  <u>Id.</u>

**III. Analysis**

    **A.  A *Qui Tam* Action is not Authorized by the Harter Act**

Bayer again asserts Count I of its claim as a *qui tam* action. Bayer cites to <u>United States v. Cobb</u>, 163 F. 791 (D. Md. 1906), specifically quoting from the case, "it is quite clear, I think,

that the intention of Congress [in enacting 46 U.S.C. Section 194] was to come to the relief of the shipper by affording him an effective remedy." The United States, in its previous Motion to Dismiss, stated that Bayer "correctly recites that 46 U.S.C. § 194 authorizes *qui tam* action for its violation, though the last reported case of such an action was in 1918," citing <u>United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co.</u>, 250 F. 939 (2d Cir. 1918) (Doc. # 53-2 at 5). However, despite Bayer's claim that this is a proper *qui tam* action, the Court does not believe that the Harter Act authorizes a *qui tam* action.

<u>United States v. Cobb</u>, the case cited by Bayer, was a criminal indictment brought by the United States under the Harter Act. <u>United States v. Cobb</u>, 163 F. 791, 791 (D. Md. 1906). The United States alleged that a carrier inserted clauses into a bill of lading to absolve itself from liability for loss or damage due to any negligence by the carrier. <u>Id.</u> Cobb objected that the statute did not create "an offense to be punished by criminal indictment; that the language indicates that the penalty is to be recovered in a civil suit by a qui tam action; [and] that the Harter act is not a criminal statute, but deals only with civil rights and duties." <u>Id.</u> at 793. The court rejected this argument, stating that it was the apparent intention of Congress to make the refusal to issue a bill of lading an act punishable by a fine, and that "the approved proceeding for enforcing the liability of a fine imposed upon any

one who has been guilty of a violation of law is by indictment, conviction, and sentence in a criminal court." Id. The court thus found that the Harter Act was in fact a criminal penalty to be enforced by indictment by the United States, and not a civil statute to be enforced by a *qui tam* action.

Plaintiff cites United States *ex rel.* Pressprich & Son Co. v. James W. Elwell & Co., 250 F. 939 (2d Cir. 1918) for the proposition that the Harter Act authorizes a *qui tam* action. Pressprich challenged the imposition of a fine in an admiralty action. Judge Learned Hand, in writing for the Second Circuit, found that there was no admiralty jurisdiction for the collection of a fine in a proceeding in personam. Id. at 941. Judge Hand observed that "the fine might be collected by a *qui tam* action in the District Court" or "an indictment [would] also lie under the Harter Act." Id. Judge Hand declined to make a distinction between an indictment under the Harter Act and a *qui tam* action. Id. But, Judge Hand also noted that the permitted *qui tam* action in Pressprich was "a complaint *qui tam at common law*." Id. (emphasis added). A select few authorities do consider this language as authorizing *qui tam* actions under the Harter Act.[2] See

---

[2] The Court's exhaustive search of case law reveals not a single *qui tam* action under the Harter Act. In fact, a search for cases citing 46 U.S.C. § 194 resulted in a mere seven cases, none of which is a *qui tam* action, aside from the present action. A search for cases citing 46 U.S.C § 193, the statute requiring the bill of lading be issued on demand, resulted in only thirty-one
(continued...)

Conn. Action Now, Inc. v. Roberts Plating Co., 330 F. Supp. 695, 697 (D. Conn. 1971) ("Judge Learned Hand noted that *qui tam* action could be brought under [the Harter Act] which provided for fines upon a shipper's refusal to issue a clear bill of lading."); 2 Benedict on Admiralty § 140 (7th ed. 2007) ("In some instances the statute provides that the penalty shall be divided between the United States and the person who gives the information to the Government officials concerning the offense. In such a case, the suit may be brought either in the name of the United States or, if the United States Attorney does not act, as a *qui tam* action in the name of any other party in whose favor the penalty or forfeiture is imposed." (citing Pressprich, 250 F. 939 (2d Cir. 1918)).

However, Judge Hand's decision clearly states that any purported *qui tam* action under the Harter Act would be at common law. United States *ex rel.* Pressprich & Son Co., 250 F. at 941. Today, there is no common law *qui tam* action under federal law. Recently, the First Circuit held that "[t]here presently is no common-law right to bring a *qui tam* action, which is strictly a creature of statute." United Seniors Ass'n v. Philip Morris USA, No. 06-2447, 2007 U.S. App. LEXIS 19748, at *11 (1st Cir. Aug. 20, 2007). United Seniors addressed a taxpayer advocacy group's claims, pursuant to the Medicare Secondary Payer statute, to compel

---

²(...continued)
cases, once again, none of which is a *qui tam* action.

several tobacco companies to reimburse the federal government for Medicare payments it had made in connection with smoking-related illnesses. Id. at *2. On consideration of whether the group had the requisite Article III standing, the advocacy group argued that Congress intended to create a *qui tam* action in the MSP, but the court disagreed. Id. at *10-11. The court, in comparing the MSP to the False Claims Act, an explicit *qui tam* statute, stated that "if [Congress] had meant unambiguously to create a *qui tam* action in [the MSP], it readily could have used - but did not - the same explicit language it employed in [the FCA]." Id. at *13. Since the statute made no mention of any jointly held action, it did not give a private citizen the right to sue on behalf of the government.[3] Id. at *13.

The First Circuit also noted that the Supreme Court, in its decision of <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765 (2000), did not list the MSP as a *qui tam* statute. Id. at *14 n.7. In <u>Vermont Agency</u>, the Supreme Court considered the question of whether state governments could be sued under the FCA by private individuals. <u>Vt. Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 768 (2000). In its decision, the Court recounted the history of the *qui tam* action. At the start of the 14th century, the English Parliament began

---

[3] The court also noted that the MSP did not contain the same procedural mechanism typical of *qui tam* statutes. <u>United Seniors Ass'n</u>, 2007 U.S. App. LEXIS 19748, at *15.

creating explicit *qui tam* statutes, which fell into two categories; (1) those that allowed private parties to sue for their own interests, and (2) those that allowed informers to receive a portion of the penalty as reward for their information. Id. at 775. *Qui tam* actions also appeared in the American colonies, with their governments passing several informer statutes, and the First Congress enacted a large number of informer statutes which resembled their English counterparts. Id. at 776-77. However, the Court stated that of the many *qui tam* statutes enacted over 100 years ago, only four remain on the books: 25 U.S.C. § 81, 25 U.S.C. § 201, 35 U.S.C. § 292(b), and 31 U.S.C § 3730. Id. at 768 n.1. The Court even distinguished these explicit *qui tam* statutes from ones which merely provided an informer a share of the forfeited property, including 46 U.S.C. § 723,[4] a shipping statute that gave an informer a portion of the forfeited property, but did not expressly authorize a suit by the informer. Id. 46 U.S.C. § 30703 is a similar informer statute, dividing the penalty between the injured party and the government.

The First Circuit's holding, and the Supreme Court's language, is convincing that there is no common-law *qui tam* action, and that the only permissible *qui tam* actions are expressly and explicitly authorized by federal statute. The Harter Act clearly does not expressly authorize a *qui tam* suit by its very language, and this

---

[4] Now codified as 46 U.S.C. § 80103.

Court will not interpret the statute otherwise. Bayer has no authority to bring this action in the name of the United States, and a *qui tam* action under the Harter Act is not authorized or proper. Accordingly, Tropical is entitled to judgment on the pleadings as to Count I of Bayer's Amended Complaint.

**B. The Harter Act does not provide Bayer with a Private Right of Action to Recover Criminal Penalties**

Although Bayer states that it seeks "damages" suffered as a result of Tropical's violation of the Harter Act, it is actually seeking to recover fines in excess of $2,000,000 pursuant to a penalty provision of the Act (Doc. # 81 at 13). The former § 194 provides that a shipper found guilty of a violation of the Harter Act will be liable for a fine no greater than $2000, and the fine "Shall be a lien upon the vessel, whose agent, owner, or master is guilty of such violation." The amended statute permits a civil action *in rem* to be brought to enforce a lien on the vessel that results from the imposition of a fine, but it does not expressly authorize an individual or entity to bring suit to assess and collect the fine. 46 U.S.C. § 30707.

Furthermore, Bayer is unable to provide persuasive legal authority for the proposition that a private individual or entity can bring suit to recover penalties under § 30707 of the Harter Act. Several of the cases relied upon by Bayer discuss the right to bring a *qui tam* action and have already been discussed in the

previous section. One Ninth Circuit case cited by Bayer made reference to the lower court's statement that a vessel's agent was "liable for a statutory penalty" for violating 46 U.S.C. § 193, but the appellate opinion did not reveal whether that penalty was actually assessed or to whom it was owed. Tyrone Pacific Int'l, Inc. V. MV Eurychili, 658 F.2d 664, 665 (9th Cir. 1981). The court noted that the shipper had "suggested to this court that 46 U.S.C. §§ 193, 194, and 1303 create an implied private right of action;" however, because the shipper never made this argument before the magistrate, the appellate court refused to consider it. Id. at 667.

The criminal nature of the fines also militates against finding a private cause of action. The criminal character of the penalties imposed under the Harter Act was clarified when § 194 was amended in 2006 under the title "Criminal penalty."[5] Section 30707 now provides that a carrier violating any provision of the Harter Act "shall be fined under title 18." 46 U.S.C. § 30707(a). Section 3571 of Title 18 of the United States Code regulates the imposition of fines for criminal offenses. It has been held that § 3571, as a criminal statute for the imposition of criminal penalties, "does not provide a private cause of action." Anderson

---

[5]The Harter Act was amended and recodified in 2006 with the intent "to conform to the understood policy, intent and purpose of the Congress in the original enactments . . . ." Pub. L. No. 109-304, 120 Stat. 1485 (2006).

v. Wiggins, 460 F. Supp. 2d 1, 7 (D.D.C. 2006); Massey v. Bank of Edmondson County, 49 Fed. Appx. 604, 606 (6th Cir. 2002).  This suggests that the intent of § 30707 is to allow the government to recover criminal penalties for violations of the Harter Act.

The Harter Act does not expressly provide for a private cause of action to recover fines under § 30707.  In addition, case law does not demonstrate the recognition of such a right.  Finally, the criminal nature of the penalties assessed under § 30707 strongly suggest that no private cause of action was intended when Congress enacted the Harter Act.  For these reasons, this Court finds that Bayer has no standing to bring a private civil suit to collect fines pursuant to § 30707 of the Harter Act.

**C.   Tropical Shipping did not Violate the Harter Act**

Furthermore, even if Bayer had standing to pursue penalties for violation of the Harter Act, the pleadings show that Tropical did not violate the Act.  46 U.S.C. § 30703 requires that a carrier issue a bill of lading or shipping document on the demand of the shipper.  46 U.S.C. § 30703(a).  The bill of lading is only required to include a statement of "the marks necessary to identify the goods," "the number of packages, or the quantity or weight," and "the apparent condition of the goods."  46 U.S.C. § 30703(b).  The statute plainly gives three options for listing goods on the bill of lading, and the bill of lading submitted to the Court shows

that the number of packages was the selected mode in this instance, listing the package as the container.

The Eleventh Circuit has held that a single container is the applicable package for purposes of liability recovery under the Carriage of Goods by Sea Act. <u>Fishman & Tobin, Inc v. Tropical Shipping & Constr. Co.</u>, 240 F.3d 956, 963-65 (11th Cir. 2001). Bayer Clothing attempts to ignore this precedent and argues that the applicable packages are the individual items of clothing, and that Tropical Shipping violated the Harter Act by listing the container as the package instead of each unit of clothing. The Court is unconvinced.

Bayer further argues that COGSA and the Harter Act should be "construed together" to allow a violation of COGSA to be enforced through suit under the Harter Act (Doc. # 97 at 2). Bayer asserts that, because COGSA § 1303 requires the carrier to list in the bill of lading the number of packages as declared by the shipper, the same requirement is "implicit" in § 30703(b)(2) (Doc. # 97 at 2). According to Bayer, "If a carrier need only issue a bill of lading to be in compliance with the Harter Act, then there is no way to enforce the obligation of a carrier to put the number of packages on the bill of lading" (Doc. # 97 at 9). Regardless of the policy arguments raised by Bayer, this Court will not read into § 30703 a requirement that is not expressly stated in the statute, and has not been found by any court applying § 30703.

The Court agrees with Tropical that 46 U.S.C. § 30703 requires that a bill of lading be issued that includes the number of packages, the quantity, or the weight, and that Tropical complied with the statute provision by issuing a bill of lading that listed the number of packages. Thus, Tropical did not violate the statute.

**IV. Conclusion**

Accepting the facts in Bayer's Amended Complaint as true and viewing them in the light most favorable to Bayer, Bayer has failed to establish that Tropical has violated the Harter Act or that Bayer has standing to bring a civil suit to recover fines under the Harter Act. Thus, Tropical is entitled to judgment as a matter of law.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

(1) Defendant Tropical Shipping and Construction Company, LTD.'s Dispositive Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. # 93) is **GRANTED.**

(2) Bayer Clothing Company's Amended Complaint is dismissed as to Tropical Shipping and Construction Company, LTD. and Crowley Liner Services.

(3) The clerk is directed to enter judgment accordingly, terminate any previously scheduled deadlines and pending motions and close the case.

**DONE** and **ORDERED** in chambers, in Jacksonville, Florida, this 8th day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record